UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROSS KAWAMOTO, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:06-CV-0792-G |
| JAMES KASTEN, ET AL., | ) | |
| | ) | **ECF** |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendants, Sportsites R/E, Inc. ("Sportsites R/E"), Sportsites, LLC ("Sportsites"), the Kasten Family Limited Partnership ("the KFLP") and James Kasten ("Kasten") (collectively, "the Kasten defendants"), to dismiss the plaintiffs' claims against them for lack of personal jurisdiction ("the motion to dismiss").  Also before the court is the motion of the plaintiffs to defer ruling on personal jurisdiction ("the motion to defer").  For the reasons given below, the Kasten defendants' motion to dismiss is denied.  Because the motion to dismiss is denied, the plaintiffs' motion to defer is dismissed as moot.

I. BACKGROUND

In their first amended complaint ("the complaint"), the plaintiffs allege, *inter alia*, that the Kasten defendants, through Steve Wiederholt ("Wiederholt"), perpetrated a fraud on plaintiffs by making false representations and material omissions when soliciting investments for the Cudahy Iceport ("the Iceport"). *See* Plaintiffs' Complaint ¶¶ 19-26. Based on Wiederholt's alleged representations and omissions, the plaintiffs gave Wiederholt a total of $300,000 to invest in the Iceport. *Id.* ¶ 27.

The Kasten defendants do not dispute the above allegations in their motion to dismiss. Instead, they contend they had no contact with any of the plaintiffs, and Wiederholt, the owner of Great Lakes Real Estate and Marketing Group, LLC ("Great Lakes") and Investment Advisory Services, LLC ("IAS"), did not solicit investments on their behalf. *See* Motion to Dismiss at 4-5. They allege that Wiederholt agreed to provide capital to SportsComm[1] through Great Lakes and IAS. *Id.* at 5. In exchange for Wiederholt's capital contributions to SportsComm, Sportsites surrendered a portion of its interest in SportsComm to Great Lakes. *Id.* Thus, when Wiederholt solicited money from the plaintiffs, the Kasten defendants argue, he did so solely on behalf of Great Lakes and IAS. *Id.* at 10. In support of

---

[1] It is unclear from the Kasten defendants' motion whether Wiederholt contracted with SportsComm Cudahy, LLC, SportsComm Venues, LLC, or both.

their argument, the movants allege that the plaintiffs never received any direct ownership interest in SportsComm.  *Id.*

Because the movants contend that the plaintiffs received an ownership interest in Great Lakes rather than a direct ownership interest in SportsComm, the Kasten defendants posit that Wiederholt was acting as the plaintiffs' agent in choosing where to invest their money rather than as an agent for the Kasten defendants specifically soliciting investments on behalf of SportsComm or the Kasten defendants.  *Id.* at 11.

## II.  ANALYSIS

### A.  Personal Jurisdiction: Legal Standard

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident."  *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998).  The court may consider affidavits, interrogatories, depositions, oral testimony, or any combination thereof to determine whether there is a basis to exercise jurisdiction.  *Id.*  Although the plaintiffs bear the burden of establishing personal jurisdiction, "[w]hen a trial court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . it must resolve any factual conflicts in favor of the plaintiff."  *Lewis v. Fresne*, 252 F.3d 352, 356 (5th Cir. 2001).  Furthermore, "in determining whether a *prima facie* case for personal jurisdiction exists on a motion to dismiss, 'uncontroverted allegations in

the plaintiff's complaint must be taken as true.'" *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006).

A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that it would be amenable to the jurisdiction of a state court in the same forum. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984). Applying state law, this court must first determine whether Texas, the forum state, could assert long-arm jurisdiction. *Id*. Because the Texas long-arm statute confers jurisdiction to the limits of the federal constitution, *Access Telecom, Inc. v. MCI Telecommunications Corporation*, 197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984), the court need only concern itself with the federal due process inquiry. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson v. Belin*, 20 F.3d 644, 647 n.1 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17.041 *et seq.* (Vernon 1997) (Texas long-arm statute).

B. <u>Due Process Requirements</u>

Due process requires the satisfaction of two elements to exercise personal jurisdiction over a non-resident defendant: (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on his part such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78 (1985); *Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1073 (5th Cir.), *cert. denied*, 498 U.S. 900 (1990). The Due Process Clause ensures that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)).

1. *Minimum Contacts*

To establish minimum contacts with the forum, a nonresident defendant must perform some act by which it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). However, the unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement. *Burger King*, 471 U.S. at 474 (quoting *Hanson*, 357 U.S. at 253); *Helicopteros Nacionales de Colombia, S.A. v.*

*Hall*, 466 U.S. 408, 417 (1984) (citing *Kulko v. California Superior Court*, 436 U.S. 84 (1978); *Hanson*, 357 U.S. at 253). In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of *in personam* jurisdiction may be exercised over a nonresident defendant: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. *J.R. Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quotations and citations omitted). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted), *cert. denied*, 481 U.S. 1015 (1987). General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts. *Helicopteros Nacionales*, 466 U.S. at 415-16.

Under either a specific or general jurisdiction analysis, however, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (citations omitted). A plaintiff must establish a substantial connection between the nonresident defendant and the forum state. *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992); *Bearry v. Beech Aircraft Corporation*, 818 F.2d 370, 374 (5th Cir. 1987) (citing *Burger King*, 471 U.S. at 475 n.18; *McGee v. International Life Insurance Company*, 355 U.S. 220, 223 (1957)).

A court must consider all factors when making the purposeful availment inquiry -- "no single factor, particularly the number of contacts, is determinative." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982);

see also *Coats v. Penrod Drilling Corporation*, 5 F.3d 877, 884 (5th Cir. 1993), *cert. denied*, 510 U.S. 1195 (1994).

### 2. *Fair Play and Substantial Justice*

To exercise specific jurisdiction, the court must examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice. See *Holt Oil*, 801 F.2d at 777. The Fifth Circuit has held that when a party directs purposeful, tortious activity towards a particular forum, it should anticipate being haled into court in that forum. See *D.J. Investments*, 754 F.2d at 547 (defendant corporate officer accused of fraud had sufficient contacts as he engaged in correspondence with plaintiff's forum, phoned plaintiff, and visited forum to negotiate); *Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 333-34 (5th Cir. 1982) (single defamatory phone call sufficient to create personal jurisdiction), *cert. denied*, 460 U.S. 1023 (1983); *Union Carbide Corporation v. UGI Corporation*, 731 F.2d 1186, 1189-90 (5th Cir. 1984) (out of state acts giving rise to tortious injury in forum state enough to warrant personal jurisdiction).

### C. Application of the Personal Jurisdiction Standards

### 1. *General Jurisdiction*

To exercise general personal jurisdiction over the Kasten defendants, the court must find continuous and systematic contacts between the Kasten defendants and the

state of Texas. See *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir.), *cert. denied*, ___ U.S. ___, 126 S.Ct. 2968 (2006). In the motion to dismiss, movants allege they have neither "transacted business in the State of Texas" nor had any personal contact with the plaintiffs. Motion to Dismiss at 8. Moreover, Kasten alleges he has only visited Texas on one occasion -- to attend his daughter's field hockey tournament. *Id*. The plaintiffs have not contradicted these claims.

Because the plaintiffs have not shown that the Kasten defendants have had continuous and systematic contacts with the state of Texas, the court concludes that it does not have general personal jurisdiction over the Kasten defendants.

## 2. *Specific Jurisdiction*

To exercise specific personal jurisdiction over the Kasten defendants, the court must find that (1) the movants have established minimum contacts with the state of Texas, (2) the plaintiffs' cause of action is related to those contacts, and (3) the exercise of jurisdiction is consistent with traditional notions of fair play and substantial justice. *Luv N' Care*, 438 F.3d at 469.

### a. Personal Jurisdiction Over Sportsites

In their complaint, the plaintiffs allege that the Kasten defendants, through Wiederholt, solicited investments for the Cudahy Iceport from individuals in Texas. Plaintiffs' Complaint ¶¶ 23-24. The plaintiffs allege that Wiederholt served as an agent for the Kasten defendants such that his actions may be attributed to them. *Id.*

¶¶ 16, 23-24.  Accordingly, they argue, the Kasten defendants purposefully availed themselves of the privilege of conducting business in the state of Texas by transacting that business through their agent, Wiederholt.  *See* Plaintiffs' Response to the Motion to Dismiss ("Plaintiffs' Response") at 3-4.

Specifically, the plaintiffs note that Sportsites -- a company managed by Kasten -- and Great Lakes -- owned by Wiederholt -- became the co-managing members of SportsComm Cudahy, LLC at some point in 2003, several months before Wiederholt approached the plaintiffs about investing in SportsComm.  *Id.*  Moreover, the Second Amended Operating Agreement for SportsComm[2] ("the operating agreement") required the co-managing members' authorization before SportsComm could enter into financing agreements like the corporate bonds the plaintiffs allege they purchased from Wiederholt.  *See* Operating Agreement, Defendants' Appendix at 14; Plaintiffs' Appendix Exhibit 2 (documents reflecting plaintiffs' corporate bonds for the Cudahy Wisconsin Iceport Village Project, which was later renamed SportsComm).

Because Wiederholt could not have sold the plaintiffs a bond interest in SportsComm without approval from Sportsites, the plaintiffs have provided adequate evidence to show that Wiederholt was acting as Sportsites' agent by selling

---

[2] The document is officially titled the Second Amended Operating Agreement for Iceport, LLC.  Iceport, LLC was the original name of the company that later became SportsComm Cudahy, LLC.  *See* Confidential Disclosure Memorandum dated March 10, 2006 at 3, Plaintiffs' Appendix Exhibit 4.

SportsComm bonds to them. Furthermore, Wiederholt's actions on behalf of SportsComm were sufficient to establish minimum contacts. Accordingly, the plaintiffs have met the first prong of the specific jurisdiction test.

The second prong of the specific jurisdiction test requires that the plaintiffs' claims be related to Sportsites' contacts with the plaintiffs. In the present case, the plaintiffs' suit clearly arose in conjunction with Wiederholt's interactions with the plaintiffs. *See* Plaintiffs' Complaint ¶¶ 23-29. Consequently, the second prong of the test is satisfied.

Finally, the court must find that it would be fair to exercise jurisdiction over Sportsites. Courts have held that a single communication with a resident of the forum state can subject a party to the jurisdiction of that state. See *Brown*, 688 F.2d at 333. In the case *sub judice*, Wiederholt's multiple interactions with the plaintiffs gave Sportsites fair warning that it could be haled into court in Texas. See *Burger King*, 471 U.S. at 472-73. Therefore, the court finds that it has personal jurisdiction over Sportsites.

b. Personal Jurisdiction Over Kasten

Plaintiffs have also submitted evidence that Kasten established minimum contacts with Texas. Together with their response to the motion to dismiss, the plaintiffs submitted a "Certificate of James Kasten" dated March 28, 2006 and bearing what appears to be Kasten's signature ("the certificate"). *See* Plaintiffs'

Appendix Exhibit 5. The certificate references the Confidential Disclosure Memorandum dated March 10, 2006 ("the disclosure memo") and an amendment thereto dated March 28, 2006. *Id.* The common date between the certification and the amendment (taken together with other statements in the certificate) indicate the certificate was sent to the plaintiffs together with the amendment and other documents related to the disclosure memo.

In the certificate, Kasten identified himself as the manager of Sportsites and stated that he was providing the certificate to SportsComm creditors on behalf of himself and Sportsites. *Id.* Because this certificate was presented to the plaintiffs, Kasten established minimum contacts with the State of Texas.

The second part of the specific jurisdiction test requires that the plaintiffs' claims arise out of their contact with Kasten. In paragraphs 31 through 35 of their complaint, the plaintiffs describe their reliance on the confidential disclosure memorandum, which was amended together with Kasten's certification. The plaintiffs claim the disclosure memo and accompanying documents included a number of misrepresentations, which induced them to execute the release and waiver forms and incur substantial expense. *See* Plaintiffs' Complaint ¶¶ 31-35; Plaintiffs' Response at 2. Thus, the plaintiffs have alleged a cause of action related to Kasten's contacts with them in the state of Texas.

Finally, as with Sportsites, the court finds that Kasten could have foreseen that his contacts with the plaintiffs in Texas would result in him being subjected to the jurisdiction of a Texas court.  See *Burger King*, 471 U.S. at 472-73.  Consequently, the court finds that it has personal jurisdiction over Kasten.

### c. Personal Jurisdiction Over Sportsites R/E and the KFLP

As noted above, the certification Kasten sent to the plaintiffs certified facts on behalf of entities other than himself.  Although Kasten specifically states he is making the certification on behalf of himself and Sportsites, he also certifies that "any entity" he controls will not engage in certain activities.  *See* Plaintiffs' Appendix Exhibit 5.  Although Kasten does not identify these other entities, the plaintiffs have alleged that Kasten "owns and controls, directly or indirectly" Sportsites R/E and the KFLP.  Plaintiffs' Complaint ¶ 8.  Because the Kasten defendants have not contradicted this allegation,[3] the court will accept it as true.  See *Paz*, 445 F.3d at 812.  Therefore, the court finds that Kasten made certifications to the plaintiffs on behalf of Sportsites R/E and the KFLP as well as himself and Sportsites.

Because the court finds that Kasten made certifications on behalf of Sportsites R/E and the KLFP, Kasten's certification on their behalf was adequate to establish minimum contacts with the plaintiffs in Texas.   Similarly, as explained in the

---

[3] Kasten even acknowledges his control of Sportsites, Sportsites R/E and the KFLP by identifying himself as the managing member of each entity.  *See* Kasten Affidavit ¶¶ 1, 5 and 10, Defendants' Appendix at 1-2.

previous section, the plaintiffs have alleged a cause of action stemming from Kasten's certification on behalf of himself and the other Kasten defendants, and the Kasten defendants could have foreseen that Kasten's connections with the plaintiffs in Texas would result in them being subjected to the jurisdiction of a Texas court. *See* Plaintiffs' Complaint ¶¶ 31-35; *Burger King*, 471 U.S. at 472-73. Therefore, the court finds that it has jurisdiction over Sportsites R/E and the KFLP.

### III.  CONCLUSION

For the reasons stated above, the Kasten defendants' motion to dismiss for lack of personal jurisdiction is **DENIED**, and the plaintiffs' motion to defer ruling is **DISMISSED** as moot.

**SO ORDERED**.

November 8, 2006.

_____
A. JOE FISH
CHIEF JUDGE